**In re Arthur Gaytan ZAMORA and Maria Elena Zamora, Debtors.**

**George Carlson & Associates, Appellant,**

v.

**United States Bankruptcy Court, Appellee.**

**No. CIV.A. 00–K–589.
Bankruptcy No. 99–16787DEC.**

United States District Court, D. Colorado.

Aug. 11, 2000.

Arthur and Maria Zamora, Pro se.

Ellen R. Welner, George Taylor Carlson, George T. Carlson & Associates, Englewood, CO, for Appellant/Attorney.

Sally Zeman, Denver, CO, Chapter 13 Trustee.

## MEMORANDUM DECISION ON APPEAL

KANE, Senior District Judge.

In this bankruptcy appeal, George T. Carlson & Associates (Carlson) challenges the bankruptcy court's denial of attorney fees for time spent in preparing and prosecuting a fee application.[1]  Carlson argues the bankruptcy court abused its discretion in denying compensation because the court acted in an arbitrary, capricious, and whimsical manner by not examining the reasonableness of the time necessary to prepare the application.  Carlson claims the minimal amount of time spent in preparing and presenting this application was both reasonable and necessary.  Carlson also asserts the bankruptcy court should compensate the firm because the court required the additional fee application in the first place.

### I.  FACTS.

Carlson filed a voluntary petition under Chapter 13 of the U.S. Bankruptcy Code on May 28, 1999.  The bankruptcy court confirmed this plan on October 8, 1999.

On October 12, 1999, Carlson filed a Chapter 13 Fee Application (short form) requesting an award of fees in the amount of $1,400, and an additional $76.93 for out-of-pocket expenses.  (R. Doc. 17.)  Carlson was paid $1,000 before this filing, leaving a claimed balance of $476.93 to be paid through the Chapter 13 plan.  Carlson attached a detailed statement of charges for the out-of-pocket expenses, but did not attach any such statement supporting the $1,400 in fees.  (*Id.*)

On October 14, 1999, the bankruptcy court determined it was unable to ascertain the reasonableness of the requested fees and, therefore, entered an order requiring Carlson to file additional information in support of its fee application.  (R. Doc. 18.)  This order required an itemized statement of services performed in the case as well as a discussion of the factors referred to in 11 U.S.C. § 330(a)(3) and (4).  (*Id.*)

---

1. The General Order of this Court 2000-02, issued on July 26, 2000, no longer permits appearances by law firms.  Rather, only members of the bar of this court and pro se litigants may enter appearances and sign pleadings, written motions or other papers.

Carlson responded to the order by filing a motion to reconsider on October 19, 1999. (First Motion to Reconsider) (R. Doc. 19.) In this motion, Carlson argued the Chapter 13 Trustee did not object to the firm's fee application and, therefore, the bankruptcy court should reconsider its order to file additional information "in light of Judge Matsch's (sic) ruling in *In re Ingersoll* [238 B.R. 202 (D.Colo.1999)]." (*Id.*) Carlson requested that the bankruptcy court vacate its order and award the requested fees. (*Id.*)

The bankruptcy court set a hearing on this First Motion to Reconsider. Before the hearing, Carlson filed an Amended Chapter 13 Fee Application seeking additional fees of $555.00. (R. Doc. 22.) This amended application increased the total request to $1955.00 plus $76.93 in expenses. (*Id.*) After considering the pre-paid $1,000.00, the new claimed balance was $1031.93, of which Carlson sought to be paid $1,000.00. To this Amended Fee Application, Carlson attached an itemized statement of services and other supporting documents. (*Id.*) It did not withdraw the First Motion to Reconsider.

At the hearing on the First Motion to Reconsider, Carlson withdrew the motion because it filed the Amended Fee Application. The bankruptcy court then considered Carlson's Amended Fee Application and, on January 19, 2000, issued an Order Allowing/Approving Fees of $1497.00 and the full amount of expenses with a total of $573.93 to be paid through the plan. (R. Doc. 24.) This order disallowed $458.00 of the requested fees on the grounds these charges were unnecessary to the administration of the case, of no benefit to the Debtor's estate, or non-compensable overhead. (*Id.* at 12.)

The bankruptcy court informed Carlson it could challenge the decision by filing a Motion to Reconsider (Second Motion to Reconsider) and could also request an evidentiary hearing. (*Id.*) Appellant filed the Second Motion to Reconsider but did not request a hearing. This Second Motion to Reconsider challenged the decision to disallow Carlson's requested fees associated with the preparation and presentation of its fee applications. (R. Doc. 28.) Carlson also requested an additional $300.00 for the time spent in the preparation of this new motion. (*Id.*)

The bankruptcy court considered the motion and entered an order denying the Second Motion for Reconsideration on March 6, 2000. (R. Doc. 36.) Appellant then filed a Notice of Appeal on March 16, 2000. (R. Doc. 37.)

## II. STANDARD OF APPELLATE REVIEW.

"The standard of review of an award of attorney fees is an abuse of discretion or an error in law." *In re Bueno,* 248 B.R. 581, 582 (D.Colo.2000). An abuse of discretion is "one that is grossly unsound, unreasonable, or illegal ... [and] occurs when a judicial determination is arbitrary, capricious, or whimsical." *Id.* In reviewing a bankruptcy court's decision, the district court functions as an appellate court and is authorized to affirm, reverse, modify, or remand the bankruptcy court's ruling. *See* Fed.R. Bankr.P. 8013; *see also In re Buyer's Club Mkts., Inc.,* 150 B.R. 787, 788 (D.Colo.1993).

## III. MERITS.

### A. *Motion to Reconsider.*

Procedurally, the First Motion to Reconsider was improper because Judge Cordova's Order Regarding Fee Application, issued on October 14, 1999, was not a final order. This Order merely directed Carlson to file an itemized statement of services performed. The final order was issued over three months later, on January 19, 2000. Bankruptcy Rules 9023 and 9024 apply Rules 59 and 60 of the Federal Rules of Civil Procedure, respectively, to

cases under the Bankruptcy Code.[2] However, neither Federal Rule of Civil Procedure 59(e) nor Rule 60(b), both applicable only to final orders, was available to challenge Judge Cordova's order.

Further, the First Motion to Reconsider misinterpreted *In re Ingersoll,* 238 B.R. 202 (D.Colo.1999), by claiming the absence of a trustee's objection required the awarding of fees. As explained below, even in dicta, *Ingersoll* said no such thing. This misreading was the focus of the First Motion to Reconsider, and the further litigation stemming from it should not be charged to the debtor's estate.

An attorney may not file a motion to reconsider in every instance where he or she is displeased with the bankruptcy court's decision regarding attorney fees. A motion for reconsideration is proper when the court has "made a mistake not of reasoning but of apprehension ... [or] if there has been a significant change or development in the law or facts since submission." *Federal Deposit Ins. Corp. v. Hildenbrand,* 892 F.Supp. 1317, 1319–20 (D.Colo.1995) (quoting *EEOC v. Foothills Title Guar. Co.,* 1991 WL 61012 at *3 (D.Colo. Apr.12, 1991), *aff'd,* 956 F.2d 277 (10th Cir.1992)). Otherwise stated: "There are three major grounds that justify reconsideration: (1) an intervening change in the controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice ... [Moreover], a motion for reconsideration is not a license for a losing party's attorney to get a 'second bite at the apple.'" *Shields v. Shetler,* 120 F.R.D. 123, 126 (D.Colo.1988).

In this instance, Carlson did not show the bankruptcy court made a "mistake of apprehension," nor that there had been a significant change in the law or the facts since the submission of the initial motion. The decision in *In re Bueno,* 248 B.R. 581

(D.Colo.2000), had not yet been entered when Carlson filed the First Motion to Reconsider. That decision, however, merely reiterates the established requirement that the bankruptcy judge must conduct an inquiry into every fee application and the judge's decision must stand as long as there is not an abuse of discretion and actual prejudice. Here, Carlson merely tried to take a "second bite at the apple" by filing the First Motion to Reconsider.

**B. *Abuse of Discretion.***

Even if the First Motion to Reconsider met the procedural requirements and the factors stated above, this appeal would still fail because Judge Cordova did not abuse his discretion in partially denying the fee request. No abuse of discretion occurred for the following reasons: (1) Carlson failed to explain adequately the necessity of many of the charges listed in the application; (2) these charges can reasonably be considered overhead expenses that should be built into an attorney's hourly rate, (3) none of the litigation concerning the fee application and the amended fee application benefitted the debtor's estate, and (4) this litigation was unnecessary because the initial fee application was vague and the short form application was filed for an amount above the maximum dollar amount then permitted by the bankruptcy court.

For these reasons I find Judge Cordova acted neither arbitrarily nor capriciously in disallowing part of Carlson's requested fees. Rather, he conducted a discrete inquiry into the application, determined the amount he believed equitable, and explained his reasoning in the order. Nothing in this order is unsound, unreasonable, or illegal such as to require reversal.

**C. *Discrete Judicial Inquiry Mandatory in Every Case.***

According to the Bankruptcy Code, as enunciated in *In re Bueno,* bank-

---

**2.** Bankruptcy Rule 3008 allows a party in interest to move for reconsideration of an order allowing or disallowing a claim against the estate. The court after a hearing on notice shall enter an appropriate order.

ruptcy court judges are required to make a discrete inquiry into every attorney fee application. *See* 11 U.S.C. § 330(3)(A). Judge Cordova notes this requirement in his Order Allowing/Approving Fees, stating, "the Court is charged with the duty of evaluating the reasonableness of every fee.... Despite [my] preference [of not charging the bankruptcy court with this duty but placing the responsibility on the Applicant/Trustee] the Court is obligated to follow the [Bankruptcy] Code which assigns the duty of awarding reasonable fees under section 330 to the Court." (R. Doc. 24 at 5–6.) The responsibility of a judge is to examine fee applications and make equitable awards of attorney fees. Although it may be seen as an inconvenient or inefficient use of judicial time, the voice of the statute is clear and controlling.

This judicial inquiry is mandatory regardless of the trustee's opinion, and a conclusion otherwise is a misinterpretation of *In re Ingersoll.* In *Ingersoll,* then Chief Judge Matsch, in dicta, expressed frustration concerning the procedure in use because it did not involve the trustee adequately in analyzing fee applications. *See* 238 B.R. 202 at 209. That procedure should be changed, the opinion suggests, because it tends to force the court to function as an adversary. *Id. Ingersoll* did not, nor could it, require the trustee's objection as a condition precedent to a judicial inquiry into a fee application. *Id.* A bankruptcy judge's duty is to conduct a discrete inquiry into every request for attorney fees and that duty cannot be delegated. *See Bueno,* 248 B.R. 581, 583 (D.Colo.2000). The trustee certainly can act as an advocate through assisting the bankruptcy court in its consideration, but such advocacy is not a permissible equivalent to the required judicial acts of deciding the facts and applying the law.

### D. *Factors Required for Every Bankruptcy Fee Request.*

Judge Cordova's Order Regarding Fee Application properly set out the require-

ments for every attorney fees request. (R. Doc. 18.) Attorneys must file an itemized statement of services performed addressing: (1) The amount of time spent on each particular task; (2) the individual who performed each task; (3) the hourly rates applied to each task; and; (4) the factors referred to in 11 U.S.C. § 330(a)(3) and (4). (R. Doc. 18.) The factors referred to in § 330(a)(3) and (4) are as follows:

(a)(3) —The court shall consider the nature, extent, and the value of the attorneys' services taking into account:

1. *time spent* on such services;

2. *rates charged* for such services;

3. whether the services were *necessary to the administration* of, or *beneficial at the time at which the service was rendered* toward the completion of, a case under this title;

4. whether the services were *performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed,* and;

5. whether the compensation is reasonable, based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title

(a)(4) —Except as provided in subsection (B)—[reproduced below], the court **shall not allow** compensation for:

1. *unnecessary duplication* of services; or

2. *services that were not reasonably likely to benefit debtor's estate or not necessary to the administration of the case.*

(B) In a ... Chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessi-

ty of such services to the debtor and the other factors set forth in this section. *See* 11 U.S.C. § 330(a)(3) and (4) (emphasis added).

### E. *The Short Form Shortcut Unacceptable.*

 The bankruptcy court created its own process for handling and expediting attorney fee requests. It allowed attorneys to file short-form fee applications provided the requested amount was less than some arbitrarily pre-determined figure (which, in this case, was $1,200.00). These amounts seem to have been approved merely because they were less than the maximum allowance, rather than because they meet the standards required by the Code. Although some economy may be lost through the Code's more thorough requirement, it nevertheless must be followed unless and until the Code is amended to the contrary.

If counsel keep contemporaneous records of their work as a case proceeds, they can efficiently itemize their fees on the initial fee request and avoid court orders forcing them to resubmit their requests with further particularity. While prudent judgment is required to cull the contemporaneous entries, the compilation for submission to the court becomes an essentially secretarial function. The use of less efficient methods does not justify increased compensation. Therefore, contemporaneous record keeping will add efficiency to fee application preparation and make up for the added burden of the Code requirement.

Also, if an Initial Fee Application is found deficient, an attorney should not be permitted to "take a mulligan" by filing a motion for reconsideration and finding comfort in the award of fees throughout the entirely unnecessary process.

### F. *Fairness of the Award.*

In this case, Carlson received more than the amount initially requested.

On October 12, 1999, Carlson requested a total of $1,476.93. On January 19, 2000, after counsel raised the request to cover the resulting litigation concerning the First Motion to Reconsider and its Amended Fee Application, the court awarded $1,573.93. This is $458.00 less than that requested in the Amended Fee Application, but $97.00 more than initially requested. This award is fair considering the procedural defectiveness of the First Motion to Reconsider. Also, Carlson requested $1,400.00 when filing a short form application even though the bankruptcy court set the maximum fee for short forms at $1,200.00. Therefore, accepting, *arguendo*, the then existing practice, Carlson should have filed a regular Fee Application, including all of the required information initially. The attempted circumvention added needless expenses to the application.

### IV. CONCLUSION.

For the above-mentioned reasons, Judge Cordova's denial of the full amount of attorney fees requested in the Fee Application is affirmed. This appeal is DENIED.